Good morning, your honors. John Lemon for Appellant Kim Walker. Your honors, Mr. Walker never had a meaningful opportunity in the district court to litigate the wiretap motions because the government withheld the pertinent discovery until literally the 11th hour or as characterized by the district court, at a time when disclosure would, to any reasonable lawyer, cause significant disruption to the defense. Based upon that discovery that was produced out of time, we now know that Agent Zapat of the AFI unit made stunning material omissions and misrepresentations in his wiretap affidavit. Certainly, had the issuing court been aware of those misrepresentations and omissions, its decision to issue the wiretap would have been different. Why? Because, as this court has held repeatedly, omissions and misrepresentations in the wiretap affidavit suggest that the wiretap is not necessary. In United States v. Gonzales, Inc. I understand that, but the totality of what you call the omissions, why were they of such a nature as to require that we conclude that the wiretap was not necessary? Because this was an incredibly involved investigation into what the DEA characterized as the Kim Burnell Walker Drug Trafficking Organization. Yet, in Zapat's affidavit, he did not even identify Mr. Walker as a person of interest, much less a target. Co-operator Sinden Young was characterized by one of the lead DEA agents as one of the three members of this triangle between Foster, Walker, and Young. These were the brains of this organization. Certainly, in the government-superseding indictment, the two defendants were Foster and Walker. They were alleged to be in charge of the whole operation. Yet, in his affidavit, Zapat omits any reference to Mr. Walker. He omits any reference to this expansive DEA probe into what he characterized as the Walker Organization. Sinden Young, the government's star witness at trial and its primary informant, not only knew he helped create the front business that Mr. Walker used, S&W graffiti removal, he identified four locations where PCP was cooked. He literally took the DEA and FBI and local authorities to those four locations and pointed them out. He explained the process of obtaining anhydrous ether, which is a critical precursor chemical. So you're relying on Sinden Young? I'm saying that Zapat is omission. Sinden Young was a cooperating criminal, to put it mildly. Is that right? That's correct. Well, right, but it wasn't Sinden Young's credibility that's the issue. The issue is that Agent Zapat omitted the fact that Sinden Young was a reliable informant. He referred to Sinden Young. Wait a minute. That seems to be exactly the same. I mean, if what the application supposedly omitted was a reference, and I apologize again for my voice, was a reference to the credibility or reliability of this informant, and somebody who is, as you characterized him at the center of the plot himself, a criminal, the kind of person whose credibility is suspect unless cooperated, I'm not sure I understand how the omission of Young is so fatal. Okay, because the government has to establish necessity for the wiretap. They have to show that they need the wiretap. So you're saying Young alone is enough? They should have just stood on Young? Basically, yes. Where did they get the corroboration? There were other omissions. There were other omissions, but Young was the primary omission. And to be perfectly clear, Zapat did identify confidential source four, which was Sinden Young, but he did not disclose the true value that Young gave to the investigation. The question posed by Judge Trott, which you seem to accept, was that when you have a criminal informant of this nature, you really need corroboration to make him believable. Where did they get the corroboration from? It's not what the wiretap's about. Well, there was already an investigation into, there were other informants. For one thing, Young was the fourth. Have you read my opinion in Canales-Gonzalez? I mean, anybody who's been involved in this business at all with an IQ over room temperature understands what happens to these people in court. There is not a trial lawyer alive who does not understand that juries are wary of any witness receiving a benefit for testifying. Here the government is to be commended for its interest in wiretap evidence, which compared to the word of an informant, either in the field or in court, is the gold standard when it comes to trustworthy evidence. The truth-seeking function of our courts is greatly enhanced when the evidence used is not tainted by its immediate informant source and has been cleansed of the baggage that always comes with them. I mean, you've read the instructions that a jury is given. Don't trust these people, and that's why this is necessary. Your Honor, the... The government is not forced to stand on evidence that doesn't have a good foundation. No, but it is required to make a full, complete, and accurate statement. Yeah, that's right, but if they had made an accurate statement, nonetheless wouldn't have deprived this affidavit of a showing of necessity. Well, there was... Your Honor, I guess I respectfully disagree with that. This informant knew intimate details of this operation. So what? I mean, to put it in the vernacular, you still have to... The government still has to prove its case, and it has to do so with evidence that convinces a jury beyond a reasonable doubt. It may well be in all cases that involve informants that there's a necessity, but that just happens to be the nature of using informants in order to pursue these kinds of cases. But also withheld from the wiretap affidavit was the fact that there was a pen register ordered by a judge in the Central District, that there were trash searches conducted by the DEA, that there had been an identification of Mr. Walker made by a person at Consolidated Can Company, that Mr. Walker had been conclusively linked to Mr. Foster through documentary evidence that was seized in the Missouri seizure. There were any number of other things in addition to Young. Young was a primary omission, but there were other significant omissions that were willfully or at least recklessly withheld from the affidavit. Your Honor, the other reason for wiretaps is that informants frequently frame people with bad information. I mean, there are a million cases out there like that. So this is a good way that the government has of making sure that the informant is not framing an innocent person. That happens all the time. Informants go to court, lie under oath. And so this is a good way to protect the truth-seeking function of the criminal justice system. Isn't that right? It may well be, Your Honor. But the issue here is that the government's affiant did not disclose the existence of this information. I understand that, but the whole point is you've seen what's been written in the cases and you understand how the system works. The government isn't stuck with having to call informants as witnesses in court. No, but it should be stuck with having to make truthful representations to the court. And that's right. And that's right. But our job at this point is to determine whether if you take those misrepresentations, as you call them, out, is there nonetheless enough there to sustain the warrant. Well, and again, this Court held in Gonzales, Inc. that any finding of a material misrepresentation or omission would undermine the government's ability to prove the need for a wiretap. And here we have any number of material omissions and misrepresentations. Tell us how the application would be different. And you've listed lots of things, and this application's got an array of problems. I'm focused, for myself at least, on the prejudice. What would the picture have looked like if there had been a full disclosure with the application? Is it an application that would have produced a wiretap warrant anyway? Well, again, I don't think that we can say, certainly, that the issuing court would have issued that wiretap because we have so many things that were germane to that decision. We have the entire investigation, this was a multi-jurisdictional investigation, into my client that was not disclosed to the issuing court. The fact that my client was a target of the investigation when he was, in fact, the primary target was not disclosed to the district court. Again, they're all itemized in the briefs, but this informant cooked PCP with Mr. Foster and Mr. Walker on three separate occasions. He identified all their vehicles. He had historical information about Mr. Walker's family. He identified brothers and sisters. He cooked with them on how many occasions, three? Two or three, yes. What's the evidence of that? He says he did. Well, in DEA and FBI 302s and those reports. He says he did. That's right. Was there any surveillance on that? Is there any independent corroboration of that? Well, yes, because he identified four of the sites where they cook, and one of them was the takedown at Landers, which was the most significant seizure in the case, other than the seizure of the 40 gallons in Missouri. I mean, there was corroboration, and they had that corroboration before they applied for the wiretap affidavit. He took them to the Landers Ranch where the PCP was being cooked in 29 Palms on February 8th. No, I'm sorry, February 13th, 2007, and they applied for a wiretap on March 19th or March 16th, 2007, five weeks later. They knew where that site was, and it was taken down inside of a week after the wiretap affidavit was filed. These omissions were extraordinary in scope. This investigation into Mr. Walker was incredibly involved. It involved two branch offices of the DEA, or at least two, in Philadelphia and Missouri, and likewise the FBI in Philadelphia and Missouri. This was an expansive investigation, and the affiant completely omitted that from the affidavit. That is, again, I think at the end of the day, the government has an obligation to be truthful with the court. That's what this is about, and they just weren't. So with that, I guess I've got a couple of minutes left. I'd like to save it for rebuttal. You may do so, counsel. Thank you. Good morning, Your Honors. Your Honors, may it please the Court, Martin Estrada on behalf of the United States. Obviously, the government agrees with the fact that the materiality element has not been satisfied, but even before then, with regard to the issue of a Frank's determination of any sort of false statement, the government obviously takes those sorts of accusations extremely seriously, and in this context, looking at the wiretap, there's no demonstration of any sort of intentional false omissions, and what needs to be remembered in looking at this, it's easy to look at this in 20-20 hindsight, after the trial, after the wiretap, but at the time of the wiretap application in March of 2007, what was known to officers and what the prior investigation revealed was all focused on the Grape Street Crips gang. The focus of this investigation started in September of 2006 with purchases, controlled purchases of PCP in the South Los Angeles area. It was all on Defendant Baker. The first two wiretaps in November and December 2006 were all on Defendant Baker. Through those wiretaps of Defendant Baker, they learned that his supplier, PCP, was Defendant Foster. So on March 2007, they applied for a wiretap on Defendant Foster. Foster was the focus of this case at that time. It was the Grape Street Crips organization and the Baker-Foster PCP distribution. And in fact, the first indictment in this case that was returned indicted Baker and Foster. Now, at the time when Agent Zapata was preparing the affidavit, that was the focus of the investigation. He provided extensive detail from Informant Young, CS4, regarding Foster. All the information the Defendant points to about this Missouri seizure in March of 2006, of the prior cooking of PCP, that's all contained in the application. The only thing not mentioned is Walker and Walker's name. But there's a reason for that. And the reason for that is that Walker was not a Grape Street Crip. He was not caught on the earlier two wiretaps. And in fact, as the Court can see from Defendant's own submission, the proposed supplemental executive record, when Synan Young was questioned in February of 2007 about Foster and Walker, he gave historical information about his dealings with Foster and Walker. But he said specifically, and I quote from the report, Young is not certain of the relationship Walker and Foster currently have. And the reason he wasn't certain of that is because, as the Court knows by now, in March of 2006, the DEA in Missouri seized 40 gallons of PCP. And as the Court saw from the testimony and the transcripts, after that seizure, Walker, Foster, and Young essentially disbanded. They stopped working together. They didn't do dealings together. They no longer cooked PCP together based on what Young knew at the time. Now, Defendant, in his reply brief, points to a December incident, December 2006, when a half gallon of PCP was given by Walker to Young. But if you read the full context of that and the full context of the testimony, what's stated there is that Young went to Walker and said he was broke. So Walker gives him a half gallon of PCP. Eventually, Young tries to take that PCP to Philadelphia. He gets arrested. He becomes an informant. But what Young explained from that incident is that he was actively trying to avoid Walker. And Walker, in turn, was actively attempting to avoid him. He stated in his testimony, he didn't want to meet me. He didn't want to bring them around me. So it was mutual. And that's at Walker's record, 395. So there's evidence they were purposefully avoiding each other. With regard to Foster, who was, in fact, the focus of the investigation during the time frame in question in March 2007, there was one chance meeting between Young and Foster in the summer of 2006, as described in his testimony at Park and Compton. But beyond that, there were no dealings, no criminal dealings, no discussions of doing business together, no manufacture of PCP, no distribution of PCP. And, in fact, the evidence shows that Foster was also attempting to avoid dealing with Young and working with Young. The affidavit, the March 19th wiretap affidavit, describes a consensual phone call that occurred between Young and Foster. And in that phone call, Foster, in essence, lies to Young. He says that he hasn't been doing anything. He can't get nothing, he says, in terms of not being able to get precursor chemicals for PCP. And he says it might be until Christmas before he can do anything. And that's at Walker's absence of record 688. But, of course, once agents went up on the wiretap, they learned that was a complete lie because when they were up on the wiretap, they learned Foster was actively selling PCP and actively manufacturing PCP with Walker. So looking at the facts and looking at the context, what was a complete lie? That Walker said, excuse me, that Foster said that he didn't have precursor chemicals and that he didn't have anything going on and that it might be until Christmas when he might have the chemicals to make PCP. In fact, agents knew. To Young? He said this to Young, and that's detailed. And by that time, at what point did Young become an informant? Young is arrested in December, January of 2006, 2007. That half gallon of PCP, he tried to sell it in Philadelphia. He was caught because the person he was selling it to was, in fact, another informant. So he's caught there, and then he decides to become an informant and begin cooperating. So most of the intelligence generated is January and February of 2007. In February 2007, he's brought to the Los Angeles DEA's attention. They begin using him, and they put in that call to Foster because, again, the focus of their case is on Foster. And Foster lies about not being involved in PCP at the time to Young. And, again, beyond the fact that there's no false statement in the affidavit, the government also believes that the defendant cannot show materiality, can't show that there would have been any effect in terms of the issuance of the wiretap application. I think the court, Judge Trott, has identified one of the major issues, and that is that this court has previously stated that an application is intended not just to collect evidence, to build an effective case. And that's in the Garcia-Villalba case. And an effective case is judged in terms of proving a case beyond a reasonable doubt. The government shouldn't be obligated to use a three-time felon, an informant with uncorroborated testimony to prove its case. And, in fact, the wire calls in this case were essential because the way Walker was basically caught and found to be part of this conspiracy was during the 10 days that the wiretap was up. The wiretap was applied for on March 19th. The wiretap essentially ended around March 25th, 26th, when agents found that PCP laboratory in Landers, California. How do you distinguish our decision in the Blackman case? The Blackman case, Your Honor, involved very different circumstances, and the most important of which was the boilerplate. Essentially, in Blackman, the court found material omissions, which, again, the government disputes were made in this case. And the court found that the necessity section essentially was boilerplate, contained in the words of the court, or generalized statements that would be true in any narcotics investigation. There's no showing here that the necessity section only contained boilerplate or generalized statements. And, in fact, that issue was already brought to the attention of the district court. That was the original grounds for the wiretap application, failure to establish necessity, and the district court rejected that. A similar claim isn't raised here. Second, purged of the material misstatements and omissions, the application contains only generalized statements that would be true of any narcotics investigation. That's what you're referring to? Yes, Your Honor. In addition to the fact that the court, excuse me, the government, isn't required to rely on the word of a three-time felon, we also have the fact that the application, even if all the historical information about Young had been inserted into the affidavit, it wouldn't have made a difference, because the point of the application was to determine the full extent of the Foster Baker PCP organization. So I suppose you like our opinion in the Aviles case. I do, Your Honor. And the statements regarding associates and other members of the conspiracy, simply knowing about Walker, simply knowing that there was an informant who could get into Walker, wouldn't have changed the fact that agents had identified Foster as a major source of PCP in the South Los Angeles area, and they wanted to determine his associates. And, of course, two other defendants in this case, M.L. Scott and Napier, were caught during those ten days of the Foster application. No dealings with Walker, just dealings with Foster. Now, I do want to just briefly address the waiver issue, because it's become a source of confusion, I think, in the case. The government's point with regard to waiver was very simple, and that is that about a month before the trial, the government produced Jenks information, Jenks information being the statements of Young, statements he had made previously during a trial, statements he'd made to the FBI and the DEA. That was all produced a month ahead of time. The Missouri issue, the Missouri evidence that the defendant has discussed at length, I want to be very direct and specific about that. That Missouri evidence is not the prior statements of Young. The prior statements of Young are the only basis for the current claim of a Franks claim. So the Missouri evidence is simply the reports regarding a seizure in March of 2006, the transcripts regarding a trial that occurred in 2008, which were publicly accessible, and the trial exhibits, which were under seal for most of that period, which the government obtained. There has been no showing, and there can be no showing, that that evidence was in any way Brady material. And, in fact, the position of the defense during the trial was that it should be excluded. So they were trying to exclude this evidence. It was in no way exculpatory. It was inculpatory, which is why they tried to exclude it, and they successfully excluded it. But the mere point that the government wanted to raise is that the statements, the transcript, the testimony of Young had been produced a month before trial, and that was the waiver issue. But beyond that, the government believes, and very strongly believes, that there are no false statements in the application, so the claim fails for that reason. And, in addition, there's no materiality shown, and the claim fails for that reason as well. There are various other claims that were raised I would submit on the papers, unless the court has any questions regarding the additional claims. No further questions, Counsel. Thank you, Your Honor. With that, the government will submit. Thank you very much. Very well. Mr. Lemon, you have some reserved time. Thank you, Your Honor. Your Honor, at the end of the day, this is about the government's obligation to tell the truth to the court. And it didn't do that below, and to a certain degree it hasn't done that here. And there are just a few points. I have four minutes left. I just want to touch on a few of the points that counsel made. First, with respect to the focus of this investigation being entirely on the Grape Street Crips, again, this was a federal investigation, an extremely large one, into Kim Vernell Walker. There was substantial overlap with Alfonso Foster. Agent Zapata, the affiant, spoke to FBI Agent Forrestel on February 8, 2007, after he had debriefed Sinden Young regarding Mr. Walker. It was an 11-page, single-spaced 302 report, and most of it was about Kim Walker. That conversation with Agent Forrestel is referenced in the wiretap affidavit. Yet the wiretap affidavit makes no reference to Kim Walker. This was certainly reckless, if not intentional, on the part of the government. With respect to the government's argument here that Walker, Young, and Foster had essentially disbanded after the Missouri seizure in March 2006, that is simply not accurate. As reflected in both Walker's testimony at trial and in the proposed supplemental excerpts of record, these three continued to work together. They talked about having to lay low for a while, but they talked about planning to sell PCP or move some water, I believe was the direct quote, in the future. There was a three-gallon sale in May of 2006 by Sinden Young to Marcus Estrada, which he received from Foster and Walker. Again, he was arrested in January 31, 2007, with PCP that he got from Mr. Walker. Even more importantly, he continues to talk on the phone with Mr. Foster and Mr. Walker about doing more business. When there was a takedown at the Landers PCP site, Walker and Foster are calling Young over and over again to talk about what to do next to give him their new contact information and to discuss plans for the future. This was not someone who had been cut out of the conspiracy. This is not someone whose information was historical. Finally, with respect to the distinction that the government is trying to draw between Jenks material versus the Missouri discovery, let's be really clear about what happened here. The government produced over 5,000 pages of documents that the defense had been asking for for two years, that the government withheld from the defense for two years, saying it's not pertinent, it's not relevant, it has nothing to do with this case. They produce it less than a month before trial. At that point, the defendants moved to exclude it from trial because it was produced late. The district court found that the government had intentionally produced this material late, that it had done so as a tactic, that it had engaged in gamesmanship, and that it did so intentionally to disrupt the defense. As a sanction, the district court excluded that evidence from trial. Now, was the evidence inculpatory in terms of a jury trial? Absolutely it was. But it was also Brady material with respect to the wiretap motions because it was utterly essential to the defendants to have this material to argue the necessity for the wiretap. When did you get it? I got it from, the government wouldn't give me all of it even now, I got it from Mr. Walker's trial counsel about three months ago. But it was produced to the defendants for the first time less than 28 days before trial, after the motion's cutoff date. Were they precluded from using it in order to attack the warrant? Well, they didn't have time. They had no reasonable opportunity to review all of that material and then to renew the wiretap motion to the district court. Did they ask for time to do that? They asked for continuity to the trial, which was denied, and the remedy that they were given. Did they ask for time to do that, to use it to attack the warrant? Your Honor, I don't believe they did. But they had no meaningful opportunity. They were in a trial mode at that point. They had less than four weeks to trial. The wiretap motion had been denied by the district court nine months earlier. The attorneys, at the time they filed the wiretap motion, had no idea this evidence existed. And certainly when it was dumped on them less than four weeks before trial, the importance and significance of this material was not readily apparent vis-a-vis the wiretap motion. It seems that they had a receptive judge who might well have granted a, if the judge reacted as the judge did, the judge very well may have said, I'm going to give you additional time to take a look at this and see if it weighs on the necessity aspect of the warrant. Well, again, the wiretap motion had been dead for nine months. The defendants had filed their motions 13 months earlier, and the wiretap necessity wasn't a blip on anyone's radar at that point in time. The defendants were scrambling to be ready for trial. Mr. Walker's attorney was filing his motions. He filed his last motion at 109 a.m. on the first day of trial. This was not a situation where the defendants had time to reflect, to digest all of this voluminous material, to think about what it meant in terms of the big picture, and to then relitigate a motion that had been denied nine months earlier. This was just not a meaningful opportunity. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Clifton